IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TAMMY HEFNER,

    Plaintiff

v.

MVB BANK, INC., a West Virginia
corporation, MVB FINANCIAL CORP., a
West Virginia corporation, and MVB-CENTRAL, INC.,
a West Virginia corporation,

    Defendants.

FILED: October 18, 2013

Civil Action No. 1:13CV238 (Keeley)
JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Tammy Hefner makes and files her Complaint against Defendants MVB Bank, Inc., MVB Financial Corp., and MVB-Central, Inc. (collectively "Defendants"), as follows:

## PARTIES

1. Plaintiff is a resident of Harrison County, West Virginia.

2. Defendant MVB Bank, Inc. is a West Virginia corporation, having its principal office located at 301 Virginia Avenue, Fairmont, Marion County, West Virginia 26554. Upon information and belief, Defendant MVB Bank, Inc. is the parent corporation of one or more of the other two Defendants in this action.

3. Defendant MVB Financial Corp. is a West Virginia corporation, having its principal office located at 301 Virginia Avenue, Fairmont, Marion County, West Virginia 26554.

4. Defendant MVB-Central, Inc. is a West Virginia corporation, having its principal office located at 301 Virginia Avenue, Fairmont, Marion County, West Virginia 26554.

5. Defendants own and operate banks in the Southern District of West Virginia, including an MVB branch at 1000 Johnson Avenue, Bridgeport, West Virginia.

6. Upon information and belief, Defendants comprise an integrated enterprise as Plaintiff's employer in that they: (1) share management services; (2) share payroll and insurance programs; (3) share services of managers and personnel; (4) share use of office space, equipment and storage; (5) operate their respective entities as a single unit; (6) have common management, common officers, and common boards of directors; (7) share a centralized source of authority for development of personnel policies; (8) share personnel records and screens and tests for applicants for employment; (9) share a human resource department; (10) have inter-company transfers and promotions of personnel that are common; (11) share the same persons who make the employment decisions for such entities; (12) share common persons who own or control the subject entities; (13) share common officers and directors; and/or (14) have common stock ownership. For example, all Defendants share the same principal place of business at 301 Virginia Avenue in Fairmont, West Virginia. Such entities have common directors and officers, interrelation between operations, centralized control of labor relations, and a substantial degree of common ownership and financial control.

7. Alternatively, upon information and belief, Defendants acted as Plaintiff's "joint employer" because each exercised sufficient control over the terms and conditions of Plaintiff's employment.

8. At all times relevant hereto, Defendants were acting through their agents, supervisors, directors, officers, employees and assigns.

## JURISDICTION AND VENUE

9. Plaintiff asserts the claims herein pursuant to the Family Medical Leave Act, 29 U.S.C. §2601 et seq. ("FMLA"), the West Virginia Human Rights Act, W.Va. Code §5-11-1 et. seq., the West Virginia Wage Payment Collection Act, W.Va. Code §21-5-1 et seq., and West Virginia common law. This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 because Plaintiff's claims arise in part under federal law.

10. Venue is proper.

## FACTS

11. Plaintiff was employed with Defendants as a branch manager from June of 2012 until September 17, 2013. On September 17, 2013, Plaintiff was maliciously terminated from her employment while she was at home recovering from major surgery and on FMLA leave.

12. Plaintiff suffers from severe endometriosis. Her medical condition was well known to Defendants, as Plaintiff had to undergo surgery on July 23, 2013. Plaintiff later notified Defendants that she was required to undergo a partial hysterectomy on September 9, 2013 and was expected to require 6 weeks to recover from the surgery.

13. Plaintiff sought approval of a medical leave of absence under the FMLA. She was an eligible for such leave, qualified for such leave as having a "serious health condition," and Defendants approved her for such leave.

14. Nevertheless, prior to Plaintiff taking her approved FMLA leave, Defendants' HR director made inappropriate comments about the fact that Plaintiff was taking leave. Plaintiff told Defendants' HR Director that she was making preparations and that she would be back to work in "no time." In response, Defendants' HR Director corrected Plaintiff and stated, "Six weeks is not "no-time. Six weeks is a long time."

15. On September 9, 2013, Plaintiff underwent a partial hysterectomy.

16. Following the surgery, Plaintiff experienced severe pain for weeks.

17. On the morning of September 17, 2013, only 8 days into her 6 weeks of expected recovery, Defendants' HR Director telephoned Plaintiff at home. On the line with the HR Director was an attorney who was employed exclusively with Defendants as their in-house legal counsel. During the telephone conversation, Defendants' in-house attorney cross-examined and interrogated Plaintiff about a banking transaction that took place in June of 2013, nearly three months earlier.

18. The June transaction pertained to a loan for another MVB employee. The loan had been fully approved by the necessary bank officials, and Plaintiff assisted with the disbursement of the loan proceeds.

19. The Defendants' in-house attorney pressed Plaintiff about the specific details concerning the disbursement of the loan proceeds. Plaintiff attempted to respond to the interrogation to the best of her ability, despite the fact that the events had taken place almost three months earlier and despite the fact that she was not able to refer to paperwork that was unavailable to her and that was at the bank. The Defendants' in house attorney demanded that

Plaintiff walk him through the transaction, without giving any consideration to the fact that Plaintiff was at home, without documents, on medication and recovering from surgery.

20. During the three months prior to the interrogation by the Defendants' in-house attorney, Plaintiff had not ever been questioned about the June loan or the loan disbursement, and she was unaware that there was any issue regarding the disbursement. In fact, Defendants' officials had approved the loan, and Defendants' officials were aware of the manner of the disbursement, including Defendants' Branch Operations Manager. The disbursement was also recorded by the bank's video camera. Nevertheless, Plaintiff was now being questioned three months after the fact about an alleged error in the disbursement, while she was on FMLA leave.

21. Prior to the interrogation by the Defendants' in-house attorney, Plaintiff had not ever been disciplined for any reasons. She was a stellar employee who rarely missed work and who performed her job in a superior fashion. While working for Defendants, Plaintiff had even developed training and been instrumental in implementing new procedures at the bank.

22. The Defendants' in-house attorney and HR Director did not want to allow Plaintiff any further opportunity to discuss the June transaction or allow her to have the benefit of reviewing the paperwork related to the transaction, however. The Defendants' in-house attorney and HR Director fired Plaintiff during the phone call.

23. Plaintiff began to cry. When she asked what she was supposed to do and explained that she was on FMLA leave, the Defendants' in-house attorney told her that she was no longer an MVB employee and that her concerns were no longer MVB's problem.

24. During the phone call, Plaintiff's cell phone –her only phone—went dead. Defendants had Plaintiff's cell phone wiped entirely clean, deleting her email, her contacts, and her only copies of family vacation photos.

25. Plaintiff was emotionally devastated. As a result of the outrageous and egregious manner in which Defendants terminated her employment, Plaintiff experienced severe emotional distress and had to seek medical treatment for that emotional distress. As a result of Defendants' egregious actions, she cried constantly and experienced a more difficult recovery from her surgery.

26. To the extent that Plaintiff committed any error (which is denied), other MVB employees have committed banking errors but were not terminated from employment or held to strict, unreasonable standards as were applied to Plaintiff. Among other things, Plaintiff was not provided a reasonable opportunity to address the alleged error. She was interrogated by legal counsel while at home, while on medication, and while recovering from surgery. She was not permitted to review documents that would have refreshed her recollection from events occurring three months earlier. Defendants and their agents targeted Plaintiff because of her disability/perceived disability, her request for accommodation, and/or the fact that she was taking FMLA leave.

27. Defendants maliciously and summarily discharged Plaintiff from her employment based upon her disability/perceived disability, her request for accommodation, and/or in retaliation for her having taken leave under the FMLA

28. Defendants failed to pay Plaintiff's final wages in compliance with the West Virginia Wage Payment Collection Act. Specifically, Plaintiff has not been paid vacation pay that is due and owing to her.

## COUNT I: UNLAWFUL VIOLATION AND RETALIATION UNDER THE FAMILY MEDICAL LEAVE ACT

29. Plaintiff reincorporates each of the foregoing paragraphs 1-28 as if each were restated herein.

30. Defendants are individually and jointly a covered employer within the meaning of the Family Medical Leave Act, 29 U.S.C. §2601 et seq.

31. After Plaintiff exercised her rights under the Family Medical Leave Act, Defendants retaliated against her because she had exercised such rights. Defendants discriminated against Plaintiff and discharged her from employment for pretextual reasons in violation of 29 U.S.C. §2615.

32. As a result of Defendants' unlawful, willful and malicious conduct, Plaintiff has suffered lost wages and benefits and other damages.

33. As a result of Defendants' willful conduct, Plaintiff is also entitled to recover liquidated damages.

34. Plaintiff is entitled to recover her attorneys' fees.

## COUNT II: VIOLATION OF WEST VIRGINIA HUMAN RIGHTS ACT FOR DISABILITY DISCRIMINATION

35. Plaintiff reincorporates each of the foregoing paragraphs 1-34 as if each were restated herein.

36. At all relevant times herein, Defendants were individually and jointly an "employer" within the meaning of West Virginia Code Section 5-11-3(d).

37. At all relevant times herein, Plaintiff was a person with a "disability" within the meaning of West Virginia Code Section 5-11-3(m). Specifically, Plaintiff:

(1) suffered from physical and mental impairments that substantially limit a major life activity;

(2) has a record of such impairment(s); and/or

(3) was regarded by Defendants as having such impairment (s).

38. Plaintiff was otherwise qualified to perform the essential functions of his job with or without reasonable accommodation.

39. Defendants failed to accommodate Plaintiff by allowing her to take time off to recover from surgery related to her disability.

40. By and through their unlawful conduct, Defendants also discriminated against Plaintiff in violation of the West Virginia Human Rights Act based upon her disability as defined in paragraph 37, above, while at the same time, providing more favorable treatment to individuals who were not disabled.

41. As a result of Defendants' unlawful and malicious conduct, Plaintiff has suffered lost wages and benefits, emotional distress, humiliation, embarrassment, and other damages.

42. As a result of Defendants' unlawful and malicious conduct, Plaintiff is entitled to unmitigated front pay.

43. As a result of Defendants' unlawful, intentional, malicious and/or reckless conduct, Plaintiff is entitled to punitive damages.

44. Plaintiff is also entitled to recover her attorneys' fees.

**COUNT III:          INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

45. Plaintiff reincorporates each of the foregoing paragraphs 1-44 as if each were restated herein.

46. Defendants, through their conduct as aforementioned, did unlawfully commit acts of an extreme and outrageous nature, intentionally and/or recklessly causing severe emotional distress to Plaintiff. Defendants had the deliberate intent to do so, knowing that Plaintiff was in a fragile state and recovering from surgery.

47. As a result, Defendants are liable to compensate Plaintiff for emotional distress, mental anguish, embarrassment, humiliation, damage to her reputation, annoyance and inconvenience, other general damages, and attorney's fees.

48. Further, as a result of Defendants' malicious and intentional conduct, Plaintiff is entitled to punitive damages.

**COUNT IV: VIOLATION OF THE WEST VIRGINIA WAGE PAYMENT & COLLECTION ACT, WV CODE § 21-5-1 et seq.**

49. Plaintiff reincorporates each of the foregoing paragraphs 1-48 as if each were restated herein.

50. At all relevant times herein, Defendants were individually and jointly an "employer" within the meaning of West Virginia Code Section 21-5-1(m).

51. Plaintiff has not paid been paid her final wages, and specifically, vacation pay that is owed to her. By failing to pay Plaintiff all wages due, Defendants have violated the West Virginia Wage Payment Collection Act, West Virginia Code §21-5-4. Accordingly, Defendants are liable to Plaintiff for such vacation play, together with three times such amount as liquidated damages. Defendants are also liable to pay Plaintiff's attorney fees, interest, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

(a) That she be entitled to a trial by jury;

(b) That she be awarded lost wages and benefits;

(c) That she be awarded unmitigated front pay under the West Virginia Human Rights Act;

(d) That she be awarded damages for emotional distress, humiliation, and embarrassment under the West Virginia Human Rights Act and for intentional infliction of emotional distress;

(e) That she be awarded punitive damages under the West Virginia Human Rights Act and West Virginia common law;

(f) That she be awarded liquidated damages under the FMLA;

(g) That she be awarded liquidated damages, attorneys fees, interest and costs under the Wage Payment Collection Act;

(h) That she be awarded reasonable attorneys fees and costs for having to bring this action;

(i) That she be awarded pre-judgment and post-judgment interest thereon; and

(j) That she be awarded such other relief as this Court may deem as just and equitable.

TAMMY HEFNER

By Counsel

_____
Maria W. Hughes, Esq. (State Bar No. 7298)
Mark Goldner (State Bar No. 11286)
HUGHES & GOLDNER, PLLC
10 Hale Street, 5th Floor
P.O. Box 11662
Charleston, WV 25339
(304) 400-4816
(304) 205-7729 facsimile
maria@wvemploymentrights.com

*Counsel for Plaintiff*